UNITED STATES DISTRICT COURT
DISTRICT OF CONNECTICUT

| | |
|---|---|
| JOHN-ERIK CHRISTENSEN : | CIVIL ACTION NO. |
| Plaintiff, : | |
| v. : | JURY TRIAL DEMANDED |
| UNIVERSITY OF BRIDGEPORT : | JUNE 22, 2020 |
| Defendant. : | |

## COMPLAINT

### JURISDICTION AND VENUE

1. This action arises under the Americans with Disabilities Act Amendments Act of 2008 (ADAAA), codified as amended at 42 U.S.C. § 12101 *et seq*.

2. The jurisdiction of this court is founded upon 28 U.S.C. §1331 (federal question) and the provisions of 28 U.S.C. §1343.

3. Venue is proper in the District of Connecticut pursuant to 28 U.S.C. §1391(b) in that the claims arose in this district and Plaintiff resides in this district.

4. Supplemental jurisdiction over Plaintiff's supplemental state law claims are invoked pursuant to 28 U.S.C. §1367 as the claims arise out of the same transaction and occurrences as Plaintiff's federal claims.

5. Costs, expert witness fees, and attorney's fees are sought pursuant to 42 U.S.C. §1988.

6. The Plaintiff received a Release of Jurisdiction on March 24, 2020.

7. The Plaintiff received a Notice of Right to Sue on March 26, 2020.

## THE PARTIES

8. The Plaintiff, John-Erik Christensen ("Plaintiff" or "Christensen") is a natural person and a resident of Woodbridge, Connecticut.

9. The Defendant, University of Bridgeport ("Defendant" or "University") is a private university, located at 126 Park Avenue Bridgeport, CT 06604, where the Plaintiff was employed.

## INTRODUCTION

10. The Plaintiff suffers from Asperger's Syndrome and consequently exhibits severely impaired social skills. Asperger's Syndrome is a recently recognized neurobiological disorder. People with Asperger's Syndrome have a hard time understanding and responding to social cues. They may exhibit disability-related symptoms, such as making blunt or inappropriate comments, alienating colleagues with quirky behavior, or dominating conversations talking about areas of personal interest.

11. According to The Employer's Guide to Asperger's Syndrome,[1] "there are a number of things that employers can do to help individuals with Asperger's Syndrome be productive and successful at their jobs." Id. p. 13. "If however you have an employee who is struggling with communication, organizational skills or other

---

[1] The Employer's Guide to Asperger's Syndrome, 2009 Barbara Bissonnette, Forward Motion Coaching. https://www.antioch.edu/new-england/wp-content/uploads/sites/6/2017/01/ASDEmpGuide.pdf.

-2-

aspects of their job, it is perfectly acceptable to offer coaching from a specialist in social communication and organization." The article also states general guidelines for making employees with Asperger's Syndrome productive at their job, "such as (i) being patient with training and break instruction into small segments; (ii) the use of check lists, electronic reminders, and a personalized 'rule book' of processes, procedures and where to go for help can address problems with short-term memory; (iii) be mindful that usually what looks like a behavior or attitude problem is a communication problem, as employees with Asperger's Syndrome often do not know what they have done to offend or anger someone (iv) don't take blunt remarks or social gaffes personally; rather use clarifying questions to understand the individual's intentions. Be specific, direct and matter-of-fact in pointing out inappropriate or unacceptable behavior; (v) assign a 'work buddy' or mentor to explain social norms, encourage social interaction and answer questions; (vi) Educate human resources personnel, managers and employees about Asperger's Syndrome; and (vii) Providing a coach to work with an employee and his or her manager."

12. "Despite normal and sometimes superior intelligence, people with Asperger's have difficulty understanding social conventions and reading social cues. As a result, they often seem tactless or **rude** ...."[2]

---

[2] https://www.health.harvard.edu/newsletter_article/aspergers-syndrome#:~:text=Despite%20normal%20and%20sometimes%20superior,feelings%20tend%20to%20confuse%20them.

13. The University neither accommodated the Plaintiff nor engaged in the ADAAA required 'interactive process.' Instead, on February 1, 2019, the University terminated Plaintiff's employment for behaviors causally related to his known disability.

## FACTUAL ALLEGATIONS

14. The Plaintiff suffers from Asperger's Syndrome.

15. The Plaintiff was hired by the University in 2013 as a Desktop Support Specialist, and was subsequently promoted into the position of System Support Specialist, Junior Windows System Administrator, and thereafter, Windows System Administrator, the position he held until his wrongful termination.

16. Plaintiff was promoted three times during his first three years of employment and ended up one-step below the CIO, (no further promotion was available in a technical role), which is a strong indicator of his satisfactory work performance.

17. For over five years, Plaintiff had been a dedicated employee of the University's IT Department, and always fulfilled the duties of his position in a satisfactory manner.

18. During onboarding on July 2, 2013, Plaintiff informed the University that he suffered from Asperger's Syndrome, an autism spectrum disorder that hinders normal development, particularly in social and interaction skills.

19. In 2017, Plaintiff's stress level increased – in large part because of work- and coupled with his Asperger's Syndrome, it caused him to require emergency medical treatment and be taken from the University to the hospital, via ambulance.

20. During this incident, Kimberly Bender disclosed Plaintiff's disability to his then supervisor, Matanya Elchanani ("Elchanani"), Joseph Della Monica, and approximately sixteen other employees in the IT Department, along with security personnel, who had also been present.

21. In February of 2018, Plaintiff's workload and responsibilities had begun to drastically increase, well beyond the job duties contained in his job description. Yet, the University failed to provide any feedback regarding his job performance.

22. On July 1, 2018, a new administration and associated staffing change further increased the Plaintiff's already burdensome workload exacerbating the symptoms associated with his disability.

A. **The Plaintiff Engages in Protected Activity and the University Fails to Engage in the ADA Interactive Process**

23. This caused Plaintiff to complain in September of 2018, to his supervisor, Mr. Elchanani. Specifically, Plaintiff complained that his disproportionate workload had been adversely affecting his health conditions.

24. Of significant importance, as Plaintiff's workload increased, his ability to use the coping skills to appear neurotypical Plaintiff had developed over more than three decades diminished; and declined even further when the stress was not relieved.

25. Additionally, being diabetic contributes to making this problem worse as stress causes blood sugar to become less controlled, which contributes to other symptoms. Eighty-hour workweeks for month's on-end was simply not sustainable, for an employee with these issues, unless he is accommodated.

26. Nonetheless, the University ignored Plaintiff's cry for help and required him to perform all of the new tasks he had been assigned, outside of job scope, and, without providing him any feedback or guidance – a setup for failure.

27. Then, on February 1, 2019, The University abruptly terminated Plaintiff from his position, for allegedly being "**rude**" —a symptom of his Asperger's disability— and not sufficiently improving, without ever placing him on a performance improvement plan or any other coaching methodology, or guidance.

28. The University also bypassed every step of progressive discipline in terminating the Plaintiff.

29. Subsequently, upon information and belief, the University has filled the Plaintiff's Senior IT position with Daryl Baker and sought a Junior IT position.

## COUNT ONE

### VIOLATION OF THE ADAAA, DISABILITY DISCRIMINATION

30. Plaintiff hereby incorporates Paragraphs 1-29, with the same force and impact as if fully set forth herein.

31. Plaintiff suffers from Asperger's Syndrome.

32. The University treated Plaintiff in a disparate manner in the terms and conditions of his employment based upon his disability, including, but not limited to the following:

    (a) Terminating the Plaintiff's employment on February 1, 2019.

33. As a result of his wrongful discharge, Plaintiff has suffered and will continue to suffer damages including but not limited to lost wages, fringe benefits, health

insurance, emotional and psychological distress, stress, anxiety, and loss of the ability to enjoy life's pleasures and activities.

34. Plaintiff seeks compensatory and punitive damages for Defendant's misconduct.

## COUNT TWO

### VIOLATION OF THE ADAAA - DISABILITY DISCRIMINATION, FAILURE TO ENGAGE IN THE INTERACTIVE PROCESS AND FAILURE TO ACCOMMODATE

35. Plaintiff incorporates paragraphs 1-34, with the same force and impact as if fully set forth herein at length.

36. Plaintiff suffers from Asperger's Syndrome.

37. The University failed to accommodate the Plaintiff's known disability, by, among other things:

    (a) Failing to engage in the interactive process, despite knowing or reasonably should have known of Plaintiff's disability;

    (b) Failing to accommodate Plaintiff's disability after becoming aware of his disability; and

    (c) Terminating Plaintiff's employment on February 1, 2019.

38. As a result of his wrongful discharge, Plaintiff has suffered and will continue to suffer damages including but not limited to lost wages, fringe benefits, health insurance, emotional and psychological distress, stress, anxiety, and loss of the ability to enjoy life's pleasures and activities.

39. Plaintiff seeks compensatory and punitive damages for Defendant's misconduct.

## COUNT THREE

### RETALIATION,
### IN VIOLATION OF THE ADAAA

40. Plaintiff incorporates paragraphs 1-39, with the same force and impact as if fully set forth herein at length.

41. Among other factors that motivated the University's termination of Mr. Christensen was retaliation due to his complaints in September of 2018, to his supervisor, Mr. Elchanani that his disproportionate workload had been affecting his health conditions.

42. As a result of his wrongful discharge, Plaintiff has suffered and will continue to suffer damages including but not limited to lost wages, fringe benefits, health insurance, emotional and psychological distress, stress, anxiety, and loss of the ability to enjoy life's pleasures and activities.

43. Plaintiff seeks compensatory and punitive damages for Defendant's misconduct.

### PRAYER FOR RELIEF

Wherefore the Plaintiff prays that this court award:

1. Money damages;
2. Costs;
3. Punitive damages, attorney fees, and expert witness fees;
4. Pre-judgment interest
5. Trial by jury; and
6. Such other relief as the Court deems just, fair, and equitable.

THE PLAINTIFF,
JOHN-ERIK CHRISTENSEN


By: _____/s/_____
Michael C. McMinn (#ct267169)
**THE MCMINN EMPLOYMENT LAW FIRM, LLC**
1000 Lafayette Blvd., Suite 1100
Bridgeport, CT 06604
Tel: (203) 683-6007
Fax: (203) 680-9881
michael@mcminnemploymentlaw.com

*COUNSEL FOR PLAINTIFF*